UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ALBERT SCHAW,

    Plaintiff,

v.                                                        Case No: 5:16-cv-311-Oc-30PRL

HABITAT FOR HUMANITY OF
CITRUS COUNTY, INC.,

    Defendant.
_____

**<u>SUMMARY JUDGMENT ORDER</u>**

    Albert Schaw, a quadriplegic, applied to receive a home from Habitat for Humanity of Citrus County, Inc. Habitat denied his application because Schaw did not meet its minimum income requirement. Schaw requested an accommodation that Habitat consider his food stamps and monthly familial support as income. Habitat, though, refused to accept either and told Schaw that it would reconsider if he provided a legal document showing the familial support was in the form of a trust or annuity. Schaw instead filed this suit, alleging Habitat violated the FHA because it failed to make reasonable accommodations for his disability and because Habitat's policy has a disparate impact on SSDI recipients. The Court concludes Habitat is entitled to judgment because Schaw requested an accommodation for his financial condition—not his disability—and because the evidence shows Habitat's policy does not have a disparate impact on the disabled.

**UNDISPUTED FACTS**

Albert Schaw is a quadriplegic. He receives $778 a month in Social Security Disability Insurance ("SSDI") benefits, his sole source of income since he is unable to work. This gave Schaw a gross annual income of $9,336. Schaw also receives $194 in food stamps and $100 in familial support from his father each month. This is an additional $2,328 per year for food stamps and $1,200 in familial support.

Habitat for Humanity of Citrus County, Inc. builds new homes for applicants who meet certain requirements, the criteria for which come from Habitat's parent organization, Habitat International. Habitat International provides income guidelines for specific counties and follows the Department of Housing and Urban Development's income guidelines (the "HUD Guidelines"), which specify what qualifies as income. Based on these guidelines, Habitat requires a minimum gross annual income of $10,170 for a family of one to be eligible to receive one of its homes. And per the HUD Guidelines, SSDI benefits qualify as income, but food stamps do not.

In July 2015, Schaw applied for housing with Habitat, listing his SSDI income and food stamps (although "not income" is written next to the food stamp entry). Habitat's Family Services Director, Rose Strawn, had Schaw also include the $100 in monthly familial support since he would be ineligible without it. Strawn requested that Schaw provide a notarized letter from his father indicating that he provided the monthly support.

Habitat's Board of Directors reviewed Schaw's application and rejected it because Schaw did not meet the minimum-income requirement. The Board was not satisfied with notarized letter because it did not provide a legal guarantee that the support would continue.

2

The Board contacted Strawn and told her it would reconsider the application if the familial support were in the form of a trust or annuity. Strawn passed this information to Schaw.

Shortly thereafter, Rebecca Bell, an attorney hired by Schaw, contacted Strawn about the Board's request. Bell indicated that a trust could be problematic because it could affect Schaw's ability to receive SSDI benefits.[1] When Strawn brought up the possibility of pursuing an annuity, Bell explained that her office did not handle annuities, but knew financial advisers who did. Strawn was left with the impression that Bell would discuss this with Schaw and his family, and put them in contact with someone to discuss an annuity. Strawn then sent a "Letter of Intent" to Schaw explaining the conditions for Schaw to receive a house from Habitat. Among the conditions was the following:

> 6. Provide documentation for Annuity Plan, (for minimum of five years), as verification of monthly support provided by your Father.

Schaw's aunt, Susan Hale, later inquired *via* e-mail about the status of the application since she was told a trust could not be set up. George Rusaw, Habitat's president and CEO, responded that Schaw must provide "legally codified" evidence of the familial support. Rusaw explained this could be accomplished with a trust or an annuity covering at least five years, as indicated in the Letter of Intent. Hale responded that the notarized letter from Schaw's father was "a bona fide form of legal support" that placed him above the minimum income requirement, and said that neither a trust nor annuity was

---

[1] Habitat disputes that setting up a trust would actually affect Schaw's right to SSDI benefits. (Doc. 26, pp. 9–10). And Schaw has since conceded as much in his motion for leave to amend, discussed below. (Doc. 28). Regardless, it is undisputed that Schaw believed that a trust could affect his ability to receive SSDI benefits, this concern was voiced to Habitat.

a possibility. Rusaw responded: "Unfortunately the notarized letter from Alberts [sic] father is legally insufficient."

Although Hale claimed in her e-mail that an annuity was not an option, both she and Schaw's father testified at deposition that they were not told that setting up an annuity would affect Schaw's SSDI benefits.

## PROCEDURAL HISTORY

Schaw filed this case in May 2016, claiming Habitat violated the Fair Housing Act. In Count I, Schaw claims Habitat failed to provide reasonable accommodations in violation of 42 U.S.C. section 3604(f). Specifically, Schaw alleged he requested as a reasonable accommodation that Habitat consider his food stamps and familial support as income so that Schaw would meet the minimum income requirement. (Doc. 1, ¶ 35). In Count II, Schaw alleged that Habitat's minimum income requirement had a disparate impact on "any applicant receiving SSDI…." (Doc. 1, ¶ 42). Habitat timely answered the Complaint and asserted affirmative defenses. (Doc. 4).

After discovery ended, Habitat moved for summary judgment. (Doc. 14). For the purposes of its motion, Habitat conceded the following: (1) that Schaw is disabled within the meaning of the FHA; (2) that Schaw requested Habitat consider his food stamps and familial support as income in addition to his SSDI benefits; and (3) Habitat denied Schaw's request to consider food stamps and the familial support—absent a trust or annuity—as income for purposes of his application. Schaw timely responded. (Doc. 20).

Schaw then filed a cross motion for summary judgment. (Doc. 21). Habitat responded (Doc. 24), but did not concede for the purposes of its response that Schaw had

requested reasonable accommodations or, logically, that Habitat had denied requests for reasonable accommodations. Habitat, though, does not dispute the facts on which Schaw relies to argue he requested reasonable accommodations that Habitat did not provide.[2]

Habitat also filed a motion for judgment on the pleadings (Doc. 26), to which Schaw responded (Doc. 27). By the motion's very nature, Habitat accepts that the facts in the Complaint are true and requests a judgment on the merits simply by assessing the pleadings. The Court did not consider that motion when issuing this Order.

Finally, Schaw moved for leave to amend the Complaint (Doc. 28) just prior to the Court entering this Order. Schaw seeks to clarify allegations regarding the effect a trust or annuity has on Schaw's SSDI benefits. When suit was filed, Schaw believed a trust or annuity would make him ineligible for SSDI benefits. But Schaw recently learned that is not true; instead, a trust or annuity could affect his eligibility for other needs-based government assistance. Schaw seeks to amend the Complaint to conform it to the evidence. Because these changes do not affect the Court's analysis on the questions of law currently at issue, the Court declines to address the motion for leave to amend before ruling on the summary judgment motions.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show there is no genuine issue as to any material fact and that the moving party is

---

[2] The Court commends Counsel for both parties for their well written and reasoned filings.

5

entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted); Fed. R. Civ. P. 56(c). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248–49.

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990). However,

there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

The FHA, as amended by the Fair Housing Amendments Act of 1988, makes it unlawful:

> (1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—
>   (A) that buyer or renter,
>   (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
>   (C) any person associated with that buyer or renter.
> (2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—
>   (A) that person; or
>   (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
>   (C) any person associated with that person.

42 U.S.C. § 3604(f)(1)–(2). For purposes of subsection (f), discrimination includes, among other things: "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]" *Id.* at § 3604(f)(3)(B).

Schaw alleges Habitat violated section 3604(f) in two ways:[3] first, by failing to make reasonable accommodations; and second, because Habitat's minimum-income

---

[3] Schaw raises a third argument in his summary judgment motion and response not raised by the pleadings: that Habitat's requirement of a legal document to verify familial support imposed a more burdensome application procedure on Schaw because non-disabled applicants were not required to provide legal documents verifying continued employment is likely. (Docs. 20, 19–20; and 21, p. 24). Schaw cannot raise this claim for the first time on summary judgment. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) (explaining liberal pleading standard "does not afford plaintiffs with an opportunity to raise new claims at the summary

requirement has a disparate impact on "any applicant receiving SSDI." The Court concludes Habitat is entitled to judgment on both claims for the reasons below.

### A. Habitat Did Not Fail to Make a Reasonable Accommodation because Schaw's Request Was Not Related to His Disability

To prevail on a reasonable accommodation claim under the FHA, "one must prove that (1) he is disabled within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) the requested accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the accommodation." *Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277, 1285 (11th Cir. 2014). As to the third element,[4] the Eleventh Circuit explained: "The FHA's reasonable accommodation provision requires only those accommodations that 'may be *necessary* ... to afford *equal* opportunity to use and enjoy a dwelling.'" *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1226 (11th Cir. 2008) (quoting § 3604(f)(3)(B)) (italics in original). The Eleventh Circuit further explained:

---

judgment stage."). But even if the claim were properly raised, Schaw's comparison misses the point. Income from familial support is not the same as income from employment. And there is no evidence that Habitat would not have required a non-disabled person to provide a legal document to verify they were receiving familial support if they wanted it counted toward their income. Consistent with the reasoning in the remainder of this Order, that means Habitat would be entitled to judgment on this claim even if properly raised.

[4] As explained in the procedural history, Habitat conceded elements (1), (2), and (4) in its summary judgment motion, and only argues that Schaw cannot satisfy element (3). But Habitat disputes elements (2), (3), and (4) in response to Schaw's summary judgment motion. Because Schaw must be able to prove all elements of his cause of action, the Court concludes Habitat would be entitled to judgment if Schaw is unable prove any element, thus making it unnecessary for the Court to address elements (2) and (4) if it determines Schaw cannot satisfy element (3). So for the sake of judicial economy, the Court will begin its analysis with element (3) since the majority of the parties' arguments focus on it.

8

> In this context, "equal opportunity" can only mean that handicapped people must be afforded the same (or "equal") opportunity to use and enjoy a dwelling as non-handicapped people, which occurs when accommodations address *the needs created by the handicaps.* If accommodations go beyond addressing these needs and start addressing problems not caused by a person's handicap, then the handicapped person would receive not an "equal," but rather a better opportunity to use and enjoy a dwelling, a preference that the plain language of this statute cannot support.

*Id.* (italics in original). This third element is dispositive in this case.

The evidence indicates Schaw requested, at most, two accommodations. First, Schaw requested that Habitat consider his familial support, as evidenced by a notarized letter from his father, as income. Second, Schaw requested Habitat consider his food stamps as income.[5] Habitat argues that neither accommodation is necessary because the requests do not address the needs created by Schaw's disability; instead, they address Schaw's financial condition. Schaw counters that the accommodation is necessary because his financial condition and inability to earn more income is a direct result of his disability.

This is a novel issue to which the Eleventh Circuit has not spoken. But persuasive authority from other circuits supports each party's position. *Compare Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293 (2d Cir. 1998)[6]; and *Schanz v. Vill. Apartments*,

---

[5] Schaw spends ample time making legal argument about whether Habitat should have considered his net annual income, as opposed to his gross annual income. But there is no evidence that Schaw, or anyone on his behalf, requested such an accommodation of Habitat. As such, the Court does not consider this as a request for a reasonable accommodation. But even if such a request had been made, the same reasoning would apply as to the other requested accommodations and the Court would conclude that it was not necessary to afford Schaw an equal opportunity to use and enjoy a dwelling from Habitat.

[6] An excerpt from the *Salute* opinion, with which this Court agrees, bears repeating:

> Plaintiffs' claim is a novel one because they do not contend that they require an accommodation that meets and fits their particular handicaps. Rather, they claim an

998 F. Supp. 784 (E.D. Mich. 1998) ("[I]t is plaintiff's financial situation which impedes him from renting an apartment at The Village, and it is plaintiff's financial situation which he is requesting that defendants accommodate. The FHAA does not require that this be done."]); *with Giebeler v. M & B Assocs.*, 343 F.3d 1143 (9th Cir. 2003) (reversing summary judgment in favor of an apartment complex because the plaintiff's disability prevented him from being able to earn an income that allowed him to meet the minimum income requirement); and *Fair Hous. Rights Ctr. in Se. Pennsylvania v. Morgan Properties Mgmt. Co., LLC*, No. CV 16-4677, 2017 WL 1326240 (E.D. Pa. Apr. 11, 2017) (holding that a landlord violated the FHA by not allowing an SSDI recipient to pay rent late, and explaining, "An SSDI recipient may need to be afforded preferential treatment in order to provide them with an equal opportunity to obtain housing.").

---

entitlement to an accommodation that remedies their economic status, on the ground that this economic status results from their being handicapped. We think it is fundamental that the law addresses the accommodation of handicaps, not the alleviation of economic disadvantages that may be correlated with having handicaps.

…

Plaintiffs seek to use this statute to remedy economic discrimination of a kind that is practiced without regard to handicap. The "opportunity to use and enjoy" language of the FHAA reinforces the ability of people with handicaps to have the same opportunity as similarly situated persons who have no evident handicaps. What stands between these plaintiffs and the apartments at Stratford Greens is a shortage of money, and nothing else. In this respect, impecunious people with disabilities stand on the same footing as everyone else. Thus, the accommodation sought by plaintiffs is not "necessary" to afford handicapped persons *"equal opportunity"* to use and enjoy a dwelling.

*Id.* at 301–02.

10

This Court is most persuaded with the reasoning of the Second Circuit in *Salute*, which parallels the holdings of the Eleventh Circuit in other FHA failure to accommodate cases. The *Salute* court reasoned that the FHA does not require accommodations for economic discrimination that is practiced without regard to disability. 136 F.3d at 301–02. This is similar to the Eleventh Circuit's reasoning in *Schwarz* that

> "If accommodations go beyond addressing these needs and start addressing problems not caused by a person's handicap, then the handicapped person would receive not an 'equal,' but rather a better opportunity to use and enjoy a dwelling, a preference that the plain language of this statute cannot support."

544 F.3d at 1226. More recently, the Eleventh Circuit held a FHA accommodation request for a ground level parking spot was not necessary because it would have placed the disabled renter in a better position than other residents, regardless of disability. *Philippeaux v. Apartment Inv. & Mgmt. Co.*, 598 F. App'x 640, 644 (11th Cir. 2015).[7]

Taken together, the Court concludes the law of this Circuit does not require accommodations for a disabled person's financial condition when those accommodations would not have been made for a non-disabled person. Here, Schaw's requested accommodations went solely to his financial condition—not his disability. Habitat was not obligated under the FHA to make those reasonable accommodations because it would have given Schaw a *better opportunity*—as opposed to *equal opportunity*—to use and enjoy one

---

[7] Both *Schwarz* and *Philippeaux*, the Eleventh Circuit opinions, were decided after the Supreme Court opinion in *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002), which the Ninth Circuit relied on in *Giebler* to reason that preferential treatment must sometimes be afforded to a disabled person. So the Eleventh Circuit's reasoning that a disabled person need only receive equal treatment applies in light of *Barnett* and not in spite of it.

of Habitat's dwellings. So Habitat is entitled to judgment on Schaw's claim for failure to make reasonable accommodations.

The Court also concludes, alternatively, that Habitat did provide a reasonable accommodation regarding Schaw's request that Habitat consider his familial support as income. Habitat allowed Schaw to provide proof the support was legally guaranteed in the form of an annuity. Nothing in the evidence indicates that such an accommodation was unreasonable as there is no testimony that an annuity would have affected Schaw's SSDI benefits. And having provided this reasonable accommodation, Habitat was not required to provide Schaw the requested alternative accommodation of considering the familial support based solely on a notarized letter. *Telfair v. Fed. Exp. Corp.*, 567 F. App'x 681, 683 (11th Cir. 2014) (holding an "employer need not give an employee a choice among several accommodations; nor is the employer required to provide an employee with the employee's preferred accommodation or show undue hardship resulting from alternative accommodations proposed by the employee" and citing *Walden v. Centers for Disease Control & Prevention*, 669 F.3d 1277, 1293–94 (11th Cir. 2012)).

### B. Schaw Has Not Presented Evidence that Habitat's Minimum-Income Requirement Has Disparate Impact on SSDI Recipients

A disparate impact claim involves "practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another…." *Smith v. Miami-Dade Cty.*, 621 F. App'x 955, 961 (11th Cir. 2015). To establish a prima facie case for disparate impact, Schaw must provide some comparative

evidence to show that Habitat's minimum-income requirement results in a disparate impact on SSDI recipients. *Schwarz*, 544 F.3d at 1218.

"[A] showing of a significant discriminatory effect suffices to demonstrate a violation of the Fair Housing Act." *Jackson v. Okaloosa Cty., Fla.*, 21 F.3d 1531, 1543 (11th Cir. 1994). A plaintiff can demonstrate a discriminatory effect by demonstrating "it makes housing options significantly more restrictive for members of a protected group than for persons outside that group." *Hallmark Developers, Inc. v. Fulton Cty., Ga.*, 466 F.3d 1276, 1286 (11th Cir. 2006) (quoting *Hous. Investors, Inc. v. City of Clanton, Ala.*, 68 F.Supp.2d 1287, 1298 (M.D. Ala. 1999)). A showing that a few people are affected is insufficient; rather, the disparity must be substantial enough to raise an inference of causation. *Smith*, 621 Fed. App'x at 961–62 (citing *Schwarz*, 544 F.3d at 1218; and *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1314 (11th Cir.1994)).

The Eleventh Circuit has further explained:

> Typically, a disparate impact is demonstrated by statistics. Although no "single test controls in measuring disparate impact," certain guidelines have developed. First, it may be inappropriate to rely on "absolute numbers rather than on proportional statistics." Second, "statistics based on the general population [should] bear a proven relationship to the actual applicant flow." Third, the appropriate inquiry is into the impact on the total group to which a policy or decision applies.

*Id.* (internal citations omitted).

The Court concludes Habitat is entitled to summary judgment on Schaw's claim that Habitat's minimum-income requirement has a disparate impact on SSDI recipients. Schaw points to no direct evidence that Habitat's minimum-income requirement has had a discriminatory impact on SSDI recipients in Citrus County as opposed to non-disabled

13

individuals who do not meet the minimum-income requirement. Rather, Schaw points to statistics listing the amount SSDI recipients receive on average in Florida and then makes the conclusion that the average is too low to meet Habitat's minimum-income requirement. These bare statistics and conclusions fail to show SSDI recipients are adversely affected.

On the other hand, Habitat provided examples that SSDI recipients have been approved for housing. Since 2013, at least eight SSDI recipients were approved for housing by Habitat. And Schaw concedes this fact:

> While there are disabled individuals who receive their income from Social Security that qualify for [Habitat's] minimum income requirements, there are those individuals like [Schaw] who are unable to meet Habitat for Humanity's minimum income requirements due to the amount he receives from Social Security which he cannot control.

(Docs. 20, p. 19; 21, p. 23). This concession illustrates that Schaw has not provided sufficient comparative evidence that Habitat's minimum-income requirement has a disparate impact on SSDI recipients, so his claim fails.

## **CONCLUSION**

Schaw, a disabled man, cannot satisfy Habitat's minimum-income requirement—a requirement that is applied equally to the disabled and non-disabled alike. Although Schaw requested accommodations to allow him to meet the minimum-income requirement, his requests were not related to his disability and Habitat did not violate the FHA by denying them. Schaw also failed to provide evidence that Habitat's minimum-income requirement disparately impacts SSDI recipients since the evidence provided to the Court only demonstrates that Habitat has approved other SSDI recipients' applications. As such, Habitat is entitled to judgment in its favor.

Accordingly, it is ORDERED AND ADJUDGED that:

1. Defendant Habitat for Humanity of Citrus County, Inc.'s Motion for Summary Judgment (Doc. 14) is GRANTED.

2. Plaintiff Albert Schaw's Motion for Summary Judgment (Doc. 21) is DENIED.

3. The Clerk is directed to enter final judgment in favor of Defendant Habitat for Humanity of Citrus County, Inc. and against Plaintiff Albert Schaw.

4. All pending motions are denied as moot.

5. The Clerk is directed to close this file.

**DONE** and **ORDERED** in Tampa, Florida, this 24th day of July, 2017.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record